

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04 C 3236 |
| DAVID PEREZ, | ) | |
| Defendant | ) | |

MEMORANDUM OPINION AND ORDER

David Perez moves the court pursuant to 28 U.S.C. § 2255 to vacate his sentence for possession of 128 kilograms of cocaine. In *United States v. Gonzalez*, 319 F.3d 291 (7th Cir. 2003), Mr. Perez's conviction and sentence were affirmed. On this motion Mr. Perez alleges that: (1) his court appointed attorneys, in violation of his Sixth Amendment right to effective assistance of counsel, failed to pursue a motion to suppress evidence and failed to inform him of his Fifth Amendment privilege against self-incrimination when he testified at the trial of his co-defendants; (2) his entry of a blind plea was not made knowingly and intelligently; and (3) in imposing his sentence the court violated his right to substantive due process by refusing to grant him a downward adjustment for acceptance of responsibility. I deny the motion.

## Factual and Procedural Backgound

On March 24, 2000, Mr. Perez was driving a trailer-truck loaded with watermelons when he was stopped by the Illinois State Police for driving four miles an hour over the posted speed limit. Mr. Perez was asked for and gave consent to search the truck and tractor in the presence of three Illinois State Police officers, ten to 15 minutes after he was stopped. At that point, a fourth Illinois State Policeman arrived with a drug sniffing dog. The dog alerted to both the truck and the trailer. An irregularity was then perceived in the rear wall of the truck, and Mr. Perez agreed to drive the truck into a towing facility in Effingham, Illinois where the police could take a closer look at the rear wall area. Once at the facility, Mr. Perez also was asked to consent to the removal of a piece of thin sheet metal, and again gave his consent. Cocaine was found stored in a compartment that had been concealed in the rear wall of the cab. Mr. Perez was taken into custody and read his constitutional rights. He cooperated in a delivery of the cocaine to others who were charged and found guilty after a jury trial.

The criminal complaint in the underlying case was filed on May 26, 2000. On that date attorney Micky Forbes of the Federal Defender Program was appointed to represent Mr. Perez. Mr. Perez filed a motion on December 11, 2000 to dismiss Ms. Forbes as his attorney. On December 15, 2000, the court granted leave to Ms.

Forbes to withdraw her appearance and granted Nathan Diamond-Falk leave to file his appearance as Mr. Perez's substitute counsel.

Mr. Perez initially pleaded guilty to possession of a controlled substance pursuant to a plea agreement conditioned on his cooperation in the prosecution of his co-defendants. However, a few weeks before the trial of his co-defendants, both the government and Mr. Perez moved to withdraw the plea. I permitted him to withdraw his original plea and enter a plea of guilty that was not based on an agreement with the government. In so doing, I first interrogated Mr. Perez as to whether his second plea was made knowingly and willingly. He assured me that it was. I also explained to him the possible consequences of pleading blind. In the same hearing, the prosecutor summarized what the government's evidence would be with respect to Mr. Perez if his case were tried; among other things, that Mr. Perez had consented to a search of the truck, the trailer and its contents. I asked Mr. Perez if the statements made by government counsel were true, and he answered, yes. I also advised Mr. Perez that if he pleaded guilty, he would be waiving his right to a jury trial in which he could not be compelled to testify, and if he elected not to testify, no adverse inference could be drawn from that fact. Mr. Perez testified that he wanted to accept responsibility for what he had done and persisted in his change of plea.

On January 30, 2001, Mr. Perez was called by the government as a trial witness in the trial of his co-defendants. He testified that his plea agreement had been revoked because he no longer wanted to testify or cooperate with the government. Mr. Perez testified unhesitatingly about his own involvement in the offense but claimed repeatedly that he could not recall facts relating to his co-defendants. He could not identify them and also denied recollection of statements he had made to the grand jury. He also testified categorically that no one had ever threatened him.

On October 3, 2001, while sentencing issues were under consideration, Mr. Perez filed a motion to withdraw his second guilty plea on the grounds that he had not been competent to stand trial and that the plea had not been made knowingly and voluntarily. He also argued that his counsel had never advised him "that he had a high probability of success on a motion to suppress the evidence recovered during the traffic stop." The motion was denied.

On October 19, 2001, Mr. Perez made a motion for a downward adjustment from the Sentencing Guidelines on the basis of his acceptance of responsibility. I denied that motion, agreed with the government that Mr. Perez should receive two points for obstruction of justice, and on November 30, 2001, sentenced Mr. Perez to 235 months of incarceration, the minimum level under the Sentencing Guidelines, which were then understood to be mandatory.

4

Judgment was entered against Mr. Perez on December 5, 2001, and on December 13, 2001, Mr. Perez filed his notice of appeal. His conviction and sentence were affirmed. *United States v. Gonzalez*, 319 F.3d 291 (7th Cir. 2003).

## Analysis

Defendant's first asserted ground for his Section 2255 petition is ineffective assistance of both of his lawyers in representing him before trial in failing to file a motion to suppress in connection with the stop that led to his arrest and the subsequent consent. The asserted basis for the stop was that defendant was driving a mere four miles an hour over the speed limit. Defendant's co-defendants argued that defendant must have been stopped as a result of racial profiling (defendant is Hispanic) because of the unlikelihood that anyone would be stopped for such a minor deviation from the speed limit. But as the Court of Appeals held in the appeal of Mr. Perez' co-defendants, they had no standing to assert defendant's constitutional rights. *United States v. Gonzalez*, 319 F.3d 291, 295-96 (7th Cir. 2003). In this motion, Mr. Perez does not argue that his attorneys should have based a motion to suppress on racial profiling. He argues, instead, that his earlier attorneys were remiss in failing to bring a motion to suppress to determine if Mr. Perez was actually driving four miles over the speed limit and to determine whether he actually consented to the search of his vehicle.

5

The failure of Mr. Perez' initial attorney to bring a motion to suppress is understandable. Mr. Perez signed a consent form soon after being stopped and thereafter cooperated. He would not likely prevail on an argument that he had not consented to the search. Present counsel does not provide any argument as to why Mr. Perez would have been likely to prevail on the argument that police were lying as to the speed Mr. Perez' truck was going at the time state police decided to pull him over. In his affidavit attached to his section 2255 motion he does not say he was not driving over the speed limit at the time he was stopped. (He does make this claim in testimony that I heard in connection with his motion, but his testimony in general was not credible, and never before had he made this claim.) But apart from the unlikelihood that he would have prevailed on this claim in a motion to suppress filed by his first attorney, Mr. Perez' first attorney had a very good reason for deciding not to pursue this route. By the time she met Mr. Perez, he had already cooperated with the government, and the government had conclusive evidence that Mr. Perez had transported cocaine in his truck. In exchange for an agreement to cooperate at the Grand Jury and at trial, she was able to negotiate a sentence of one half of what he would have received under the Sentencing Guidelines. Under the circumstances, this was a very good result for Mr. Perez. His first counsel's performance cannot be faulted under *Strickland v. Washington*, 466 U.S. 668 (1984).

6

Unfortunately for Mr. Perez, he chose not to stick to his agreement. Whether because he had been threatened (which he denied at trial but which he claimed in a meeting with the Assistant United States Attorneys in this case), or for some other reason, he declared his intention not to testify at trial, resulting in his losing the benefit of the plea agreement discussed above. Mr. Perez' second counsel, Nathan Diamond-Falk, testified at the evidentiary hearing in this matter. Mr. Diamond-Falk, of course, had every reason to pursue a motion to suppress if there was any likelihood that he could prevail. At the hearing, it appeared that Mr. Diamond-Falk had not considered a motion to suppress the stop of the truck itself, although he considered and rejected (rightly, as discussed above) a challenge based on lack of consent to search. As explained above, a motion to suppress based on the argument that Mr. Perez was really not going 59 m.p.h. where the speed limit was 55 m.p.h. was not likely to be successful. Since Mr. Perez did not raise the question of racial profiling, he has waived any argument that Mr. Diamond-Falk should have brought a motion to suppress on this ground.[1]

Mr. Perez also argues ineffective assistance of counsel in failing to advise Mr. Perez that he did not have to testify at the trial of his co-defendants. As it turned out, Mr. Perez would have

_____

[1]    Counsel testified at any rate that he did not think he would prevail on this ground because Mr. Perez is light skinned and does not look Hispanic.

been better off not pleading guilty, and going to trial, so long as he did not testify at all. His Guideline offense level would have been 36, rather than the 38 he received following his perjured testimony. If he had gone to trial, the government could not have forced his testimony. But instead Mr. Perez replaced his earlier cooperation plea with a blind plea, and he was called as a witness to testify despite the fact that he had said he would not testify against his co-defendants. And then he lied. At the time of his testimony, Mr. Diamond-Falk was in the courtroom.

Mr. Diamond-Falk was questioned regarding what he had told Mr. Perez prior to his testimony. He says, and I find this testimony credible, that he told Mr. Perez that if he testified he had better testify truthfully, and that if he did not his sentence could be increased.

Mr. Perez argues that his counsel did not tell him that he had not waived his privilege against self incrimination by his guilty plea. Mr. Diamond-Falk admits that he did not tell him this because Mr. Diamond-Falk did not realize that the privilege is not waived until after judgment is entered following sentencing. *Mitchell v. United States*, 526 U.S. 314 (1999). In this case, however, the error was harmless. The government had already prepared, obtained signed permission from the appropriate U.S. Department of Justice officials, and tendered to defendant and his counsel a grant of immunity compelling Mr. Perez' testimony. At the hearing on his

8

blind plea, the government again stated its intention to immunize Mr. Perez following his plea "forcing him to testify at the trial of his co-defendants...." Tr., January 26, 2001, at 12. Mr. Diamond-Falk had discussed the immunity waiver with Mr. Perez and had told him the government was prepared to compel his testimony. If Mr. Perez declined to testify when called, the government would have tendered the grant of immunity to me, and compelled Mr. Perez' testimony. It was unnecessary because Mr. Perez testified without it. There is no reason to believe that if Mr. Perez had testified under the grant of immunity (which would have protected only truthful statements), the outcome would have been any different.

Mr. Perez next argues that his blind plea was not entered knowingly and intelligently. Basically, he argues that he did not fully comprehend that instead of the 60 to 73 months sentence that he was giving up, because of the "vindictiveness" of the United States and this court, he could receive the sentence that he did receive of 235 months in custody. Mr. Perez is correct that the Guidelines sentence he received is very long. But Mr. Perez was well advised that he could receive such a sentence if he decided not to cooperate and then lied at trial. By not cooperating he was at the very least giving up what had not been a right, but had been agreed, of a sentence between 50 and 66% of the Guidelines sentence. In testimony before me, Mr. Perez admitted that his first attorney told him if he refused to cooperate he would be giving up the

benefit of his plea agreement. At the hearing on his blind plea, he was told that he was facing a mandatory minimum sentence of ten years, and that the statutory sentence could be life in prison. At that hearing I also commented that his minimum sentence under the circumstances under the Guidelines was going to be at least double what he would have received under his earlier plea agreement. While it is unclear whether Mr. Diamond-Falk warned Mr. Perez of the possible consequences of not testifying truthfully before or after his blind plea, Mr. Perez was told at the time of his plea that if he testified falsely during the plea, he could be prosecuted for making false statements. Neither the government, Mr. Perez' counsel, nor I were required to anticipate at that time that Mr. Perez might be intending to lie at trial, and therefore to warn him that despite his guilty plea he might not obtain acceptance of responsibility and receive additional points for obstruction of justice. Mr. Perez was told by me during his plea (during both of them) that he had a choice of going to trial and that if he did his testimony could not be compelled.

Mr. Perez argues that his constitutional rights were violated by my refusal to give him a downward departure based on his earlier cooperation. This issue has already been raised by him in his direct appeal and was rejected by the Seventh Circuit. He cannot reargue it here. At the time of Mr. Perez' sentence and appeal, the Sentencing Guidelines were believed mandatory. Unless the Seventh

Circuit decides that this Court has discretion to reconsider sentences that were final before the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), I cannot reconsider his sentence using the Sentencing Guidelines as a discretionary guideline.

For the reasons stated in this opinion, Mr. Perez' § 2255 motion is denied.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: August 16, 2006